Filed 11/22/23  West Central Produce v. Lazar CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| WEST CENTRAL PRODUCE, INC., | B324060 |
| Plaintiff, | Los Angeles County Super. Ct. No. 21NWCV00179 |
| v. | |
| TARA LAZAR et al., | |
| Defendants and Respondents; | |
| WCP Parent, LLC, | |
| Movant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Olivia Rosales, Judge.  Affirmed.

Buchalter, Matthew L. Seror and Robert M. Dato for Movant and Appellant.

No appearance for Defendants and Respondents.

————————————

WCP Parent, LLC has a perfected security interest in the assets of plaintiff West Central Produce, Inc. (West Central), including West Central's claims against its former customers, defendants Tara Lazar, Toucans Palm Springs, Inc., and Mister Lyons, LLC (collectively Lazar). Pacific American Fish Co., Inc. (Pacific American) is a judgment creditor of West Central. It filed a notice of judgment lien in this action. West Central and Lazar reached a settlement of their claims, and Lazar filed a motion for an order approving the settlement as having been made in good faith. A few days before that hearing, the same trial judge ordered WCP Parent's security interest in a money judgment in favor of West Central, in another matter, had priority over Pacific American's judgment lien. WCP Parent did not learn of the good faith settlement hearing in this action until then. As a result, it appeared but hadn't been able to file proof of its senior claim. The trial court approved the settlement and ordered the settlement funds were to be disbursed to Pacific American in partial satisfaction of its judgment against West Central.

About two months later, based on the hearing date it had been able to reserve, WCP Parent filed a motion to intervene under Code of Civil Procedure[1] section 387. The trial court denied the motion finding WCP Parent had not shown West Central was unable to represent its interests adequately to warrant mandatory intervention, and denying permissive intervention as WCP Parent's motion was untimely.

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

WCP Parent contends the trial court erred as the undisputed evidence showed West Central did not adequately protect WCP Parent's interests, WCP Parent filed its motion based on the soonest available hearing date that would accommodate the court's and counsel's calendars, and it would be "absurd" to hold WCP Parent had a priority over Pacific American in one case but not in another. We find no prejudicial error and therefore affirm.

## FACTS AND PROCEDURAL BACKGROUND

In 2018, under separate agreements, HSBC Bank USA, National Association (HSBC) made a loan to West Central and extended a line of credit to it. The loan and line of credit were secured by all of West Central's personal property, including accounts receivable, under a security agreement and related documents executed at the same time as the agreements. HSBC filed three UCC financing statements with the Secretary of State in connection with the loan and line of credit. The loan and line of credit were amended in 2019.

On August 5, 2020, HSBC assigned the loan, line of credit, and security agreements, related notes, and UCC financing statements to WCP Parent. The assignment included any contract claims HSBC had against West Central. Under the assignment, WCP Parent had the same priority and lien rights as HSBC, including the security interest in all of West Central's property. The three UCC financing statements were amended to identify WCP Parent as the sole holder of the security interest in West Central's property. The amendments were filed. After the assignment, WCP Parent advanced no further funds to West Central. WCP Parent's secured claims against West Central are worth almost $28 million with interest continuing to accrue.

On February 5, 2021, Pacific American obtained a money judgment against West Central for just over $51,000. It filed a notice of lien in several pending matters including in the current action (on July 15, 2021) and in *West Central Produce v. Blanca Investments* (Los Angeles Super. Ct. No. 21NWCV00104) (*Blanca*). The same judicial officer presided over both actions. *Blanca*, like this action, involved West Central's efforts to collect a debt from a former customer. WCP Parent and Pacific American both asserted competing claims to West Central's assets in that action.

On May 26, 2022, the court issued a detailed ruling in the *Blanca* case finding WCP Parent's security interest in West Central's property was "entitled to priority" over Pacific American's judgment lien. The court granted WCP Parent's third-party claim to the entire judgment amount, almost $101,000. WCP Parent's counsel in *Blanca* was the same as in the current action.

Meanwhile, Lazar settled this action with West Central for $25,000 and filed a motion for an order finding the settlement was made in good faith, to be heard on June 1, 2022. As part of that motion, Lazar asked the court to determine the payee of the settlement funds. WCP Parent did not learn of the hearing until after the court issued the May 26, 2022 order in *Blanca*, just days before June 1. WCP Parent's counsel attended the hearing,[2] but WCP Parent had no "opportunity to file papers in this action

---

[2] At oral argument, WCP Parent's counsel stated he did not know whether the attorney who attended the hearing was permitted to make an appearance or to address the court.

4

establishing its senior security interest over the assets of West Central."

At the June 1, 2022 hearing, the court granted Lazar's unopposed motion and approved the good faith settlement of West Central's claims for $25,000. The court noted that, despite challenging its validity, West Central had presented "no evidence or argument" as to why Pacific American's judgment lien was not valid. The court thus ordered the settlement funds to be disbursed to Pacific American in partial satisfaction of its judgment against West Central. The settlement funds were sent to Pacific American's counsel by certified mail on July 8, 2022.

After the June 1 hearing, WCP Parent "research[ed], prepare[d] and file[d]" a motion to intervene. August 25, 2022 was one of the first hearing dates available on the court's calendar that also was available for WCP Parent's counsel. Counsel reserved that hearing date and filed the motion the required 16 court days beforehand, on August 3, 2022.

WCP Parent argued it was entitled to mandatory intervention because West Central failed to protect its interests, or, alternatively, to permissive intervention because its priority interest in the settlement distribution was clear given the court's ruling in *Blanca*. Lazar opposed the motion, arguing WCP Parent's motion was untimely, as, even assuming it was unaware of the good faith settlement motion until after the *Blanca* hearing, it waited more than two months to file its motion without giving a valid reason for the delay. In reply, WCP Parent argued it was undisputed West Central provided it no notice of the good faith settlement motion, and WCP Parent moved promptly to file its motion once it knew its interests were not being protected.

5

The court heard WCP Parent's motion on September 1, 2022. The court asked WCP Parent's counsel why he hadn't filed an ex parte application to stay disbursement of the settlement check until his client's motion to intervene could be heard. Counsel stated his practice always had been to reserve an available hearing date first and then to file the motion based on the reserved date. In other words, counsel's filing of the motion to intervene "was driven by" the available hearing date. Because the issue was one of money only, WCP Parent's counsel did not believe the issue rose to the "the level of exigency that [he] need[ed] to rush into court and jump everybody else who has been waiting in the motion calendar line to cut in line essentially. No one is moving boxes out of the backdoor of the warehouse that I need to get in there immediately."

Lazar's counsel agreed with the court and argued this was "an issue with WCP Parent and West Central . . . not communicating," and the settlement proceeds had been disbursed. Counsel also noted her client already had to pay her to appear at "multiple, extra, additional court hearings and to write this [opposition]." The court took the matter under submission.

On September 30, 2022, the court issued a written order denying the motion to intervene. The court found WCP Parent did not meet the requirements for mandatory intervention. The court cited authorities from the Ninth Circuit for the proposition that where an applicant for intervention's interest is identical to, or has the same objective as, that of a party, the applicant must make a compelling showing of inadequate representation. (Citing, *League of United Latin American Citizens v. Wilson* (9th Cir. 1997) 131 F.3d 1297, 1305, and *Perry v. Proposition 8*

*Official Proponents* (9th Cir. 2009) 587 F.3d 947, 951.)[3] The court found WCP Parent had made "no such showing." The court explained, "WCP Parent's interests in this action are identical to that of Plaintiff West Central Produce's interests. In fact, WCP Parent's interest in the litigation did not arise until after the settlement had been finalized, because without any monetary award in favor [of] Plaintiff West Central Produce, WCP Parent has no actual interest in the action. There is no showing that Plaintiff West Central Produce is unable to adequately represent WCP Parent—it[s] senior lienholder's—parallel and identical interests here."

Although the court found WCP Parent satisfied the standing requirements for permissive intervention, it held the application was untimely. The court found, at a minimum, WCP Parent was aware of its interest in this litigation by June 1, 2022, when it had notice the court had approved the good faith settlement and designated Pacific American as the settlement funds payee. Given WCP Parent did not file its motion until two months later—and almost one month after the settlement funds had been disbursed—and did not seek ex parte relief to expedite or specially set a hearing on its motion to intervene, the court found the motion untimely. The court also found the parties would be prejudiced by WCP Parent's delayed intervention, as it sought "to reopen the case and risk[ed]

---

[3]  Section 387 " 'was modeled after and is "virtually identical" to rule 24 of the Federal Rules of Civil Procedure.' [Citations.] Thus, '[i]n assessing [the] requirements' for mandatory intervention, '[courts] may take guidance from federal law.' " (*Crestwood Behavioral Health, Inc. v. Lacy* (2021) 70 Cal. App.5th 560, 573 (*Crestwood*).)

disturbing the settlement agreed to by the parties."  Plus, the settlement proceeds already had been disbursed.  WCP Parent appealed.

## DISCUSSION

WCP Parent argues it established a right to mandatory intervention, and, in any event, the trial court abused its discretion in denying WCP Parent permissive intervention and finding its motion to intervene untimely.  WCP Parent's appeal is unopposed.

**1.** ***Applicable law and standards of review***

Nonparty intervention under section 387 is "mandatory (as of right) or permissive."  (*Hodge v. Kirkpatrick Development, Inc.* (2005) 130 Cal.App.4th 540, 547.)  The right to mandatory intervention is triggered by a "timely application" and a showing that the proposed intervenor, as relevant here, has "an interest relating to the property or transaction that is the subject of the action and [where] that person is so situated that the disposition of the action may impair or impede that person's ability to protect that interest, unless that person's interest is adequately represented by one or more of the existing parties."  (§ 387, subd. (d)(1)(B).)  "In other words, to establish a right to mandatory intervention, the nonparty must:  (1) show a protectable interest in the subject of the action, (2) demonstrate that the disposition of the action may impair or impede its ability to protect that interest; and (3) demonstrate that its interests are not adequately represented by the existing parties."  (*Carlsbad Police Officers Assn. v. City of Carlsbad* (2020) 49 Cal.App.5th 135, 148 (*Carlsbad Police Officers*).)  Although the right to intervene under this section " 'should be liberally construed in favor of intervention' " (*Crestwood, supra,* 70 Cal. App. 5th at p. 572),

8

"that right is conditioned on a court's initial determination that the application to intervene is *timely*" (*Carlsbad Police Officers,* at p. 148).

Permissive intervention, on the other hand, is available if, again, " 'upon timely application' . . . : '(1) the proper procedures have been followed; (2) the nonparty has a direct and immediate interest in the action; (3) the intervention will not enlarge the issues in the litigation; and (4) the reasons for the intervention outweigh any opposition by the parties presently in the action.' " (*Carlsbad Police Officers, supra*, 49 Cal.App.5th at p. 148, citing § 387, subd. (d)(2).)

"When mandatory intervention 'is sought, because "the would-be intervenor may be seriously harmed if intervention is denied, courts should be reluctant to dismiss such a request for intervention as untimely, even though they might deny the request if the intervention were merely permissive." ' " (*Crestwood, supra*, 70 Cal.App.5th at pp. 574–575 [court abused its discretion in denying application for mandatory intervention as untimely based on 100-day delay where real parties and trial court had identified no prejudice from the delay]; see also *Truck Ins. Exchange v. Superior Court* (1997) 60 Cal.App.4th 342, 351 (*Truck Ins. Exchange*) ["timeliness is hardly a reason to bar intervention when a direct interest is demonstrated and the real parties in interest have not shown any prejudice other than being required to prove their case"].)

The standard of review for mandatory intervention is unsettled—either the abuse of discretion or de novo standard applies. (*Crestwood, supra*, 70 Cal.App.5th at p. 573.) A " 'determination of the timeliness of intervention' is reviewed 'for an abuse of discretion' " (*ibid.*), as is denial of permissive

9

intervention (*Truck Ins. Exchange, supra*, 60 Cal.App.4th at p. 345).

## 2. *WCP Parent's interests were not adequately represented*

The trial court found WCP Parent did not meet the requirements for mandatory intervention, "[n]otwithstanding the parties' arguments concerning timeliness." WCP Parent undisputedly had a protectable interest in the action, as a senior lienholder to West Central's assets, which would include any funds it recovered from Lazar. The disposition of this action also undisputedly impaired WCP Parent's ability to protect that interest, as the court ordered the funds disbursed to Pacific American without considering WCP Parent's senior interest in West Central's assets. The court nonetheless found WCP Parent failed to demonstrate West Central would be "unable to adequately represent WCP Parent—it's senior lienholder's—parallel and identical interests here." Setting aside the issue of timeliness for now, we conclude the court erred in finding WCP Parent did not "meet the standards for mandatory intervention."

WCP Parent shared the same interest as West Central in this action—to recover monies Lazar owed West Central. As the court correctly noted, WCP Parent's interest in this litigation did not arise until the parties finalized their settlement requiring Lazar to pay $25,000. The court found, as WCP Parent's counsel had argued, WCP Parent would have had no actual interest in the litigation without a monetary award in favor of

10

West Central.[4]  Once that settlement was reached, however, West Central's and WCP Parent's interests diverged.

West Central is indebted to *both* Pacific American and WCP Parent, and Pacific American and WCP Parent each have claimed a senior interest in West Central's assets.  None of their interests were aligned at that point.  Presumably, as it denied the validity and enforceability of Pacific American's lien, West Central wanted Lazar to pay it the $25,000.  Moreover, whether the proceeds were disbursed to Pacific American or to WCP Parent, they partially would satisfy a debt West Central owed.  West Central thus had no incentive to assert WCP Parent's interest, as its senior lienholder, at the good faith settlement hearing—to argue the court should designate WCP Parent as the settlement funds payee.

In any event, the evidence demonstrates WCP Parent made a compelling showing that its interests were not adequately represented by the current parties.  It is undisputed West Central did not give WCP Parent notice that the parties had settled or of the upcoming good faith settlement hearing.[5]  And, WCP Parent's counsel declared WCP Parent did not learn of the settlement or the hearing until just a few days before June 1, 2022.  Thus, until then, it was unaware it had an interest in

---

[4]     This is also the reason why WCP Parent was not aware that it had an interest in this action until it learned of the good faith settlement hearing, and the parties were not adequately representing that interest.

[5]     In its opposition to the motion to intervene, Lazar also argued it was not its duty or responsibility "to give notice of the pending good faith settlement motion to a nonparty such as WCP Parent."

11

the action that needed to be protected. As WCP Parent's counsel explained at the hearing, "If [Lazar] was going to default[,] and no money was going to be paid in this case, then [WCP Parent's] interest is not being not protected." But when WCP Parent learned of the good faith settlement motion, it then "realized that there was money to be paid," and West Central was not protecting WCP Parent's interest.

WCP Parent was unable to assert its senior security interest in the settlement proceeds at the June 1 hearing because it had learned of the hearing too late to "file papers . . . establishing its senior security interest over the assets of West Central." As there had been no need for it to petition to intervene earlier, it " 'lack[ed] any standing to the action.' " (*Carlsbad Police Officers, supra*, 49 Cal.App.5th at p. 148.) Nor did West Central "indicate[ ] [WCP Parent] had a senior security interest" in the settlement funds at the hearing. WCP Parent's interest thus was not before the court. Finally, it is undisputed WCP Parent's interest was not protected as the court determined Pacific American was the settlement funds payee without considering WCP Parent's interest.

Accordingly—whether considering the issue de novo or for an abuse of discretion—we conclude the trial court erred in finding WCP Parent failed to demonstrate its interests were not adequately represented by West Central. WCP Parent thus was entitled to intervene in this action as of right if its application was timely. (*Carlsbad Police Officers, supra*, 49 Cal.App.5th at p. 148.)

3. **Timeliness**

In the context of intervention, " '[t]imeliness is determined by the totality of the circumstances facing would-be intervenors,

12

with a focus on three primary factors:  "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for the delay." ' " (*Crestwood, supra,* 70 Cal.App.5th at p. 574.)  " ' "[D]elay in itself does not make a request for intervention untimely." ' " (*Ibid.*)

"Although the totality of the circumstances should be considered, 'prejudice to existing parties is "the most important consideration in deciding whether a motion for intervention is timely." ' [Citation.]  This does not, however, include prejudice that would result from allowing intervention.  [Citation.]  Rather, only the ' "prejudice caused by the movant's delay" ' should be considered." (*Crestwood, supra*, 70 Cal.App.5th at pp. 574–575 [prejudice from having to relitigate order resulted "from the fact of intervention—and not from the . . . delay in seeking intervention"].)  Moreover, "the timeliness of a motion to intervene under section 387 should be determined based on the date the proposed interveners knew or should have known their interests in the litigation were not being adequately represented." (*Ziani Homeowners Assn. v. Brookfield Ziani LLC* (2015) 243 Cal.App.4th 274, 282.)

The court found WCP Parent's motion untimely in the context of considering its alternative application for permissive intervention.  In making that finding, the court acknowledged, "Although requests for mandatory intervention are not often denied on grounds of untimeliness, the standard is not the same with respect to ruling upon the timeliness of an application for permissive intervention."  Indeed, "[w]hen mandatory intervention 'is sought, because "the would-be intervenor may be seriously harmed if intervention is denied, courts should be reluctant to dismiss such a request for intervention as untimely,

13

even though they might deny the request if the intervention were merely permissive." ' " (*Crestwood, supra*, 70 Cal.App.5th at p. 574.)

Under the unique procedural posture of this case, we conclude the court did not abuse its discretion in finding WCP Parent's motion to intervene untimely. We also conclude WCP Parent's delay supports the court's denial of its motion to intervene despite our conclusion that it otherwise satisfied the requirements for mandatory intervention.

Section 387 explicitly permits a party to seek leave to intervene by ex parte application: "A nonparty shall petition the court for leave to intervene by noticed motion *or ex parte application*." (§ 387, subd. (c), italics added.) As the court noted, WCP Parent could have filed an ex parte application to ask the court to stay disbursement of the settlement proceeds pending a hearing on its motion to intervene. It is admirable that counsel did not consider "an issue of $25,000 between the parties" as an exigent circumstance. In this instance, however, where the disbursement of the settlement funds could occur at any time, and WCP Parent wanted to assert its right to payment of those funds, WCP Parent's failure to seek ex parte relief was unreasonable.

In *Crestwood*, the court reversed the denial of the Labor Commissioner's motion for mandatory intervention as untimely where the Labor Commissioner delayed 100 days from learning the court had stayed her investigation of an employee's complaint pending an arbitration the employer successfully had compelled, before moving to intervene to vacate that order. (*Crestwood, supra*, 70 Cal.App.5th at pp. 569–570, 573.) There, however, the Labor Commissioner had sought ex parte relief and had

14

not filed her application sooner due to the large number of complaints she had to investigate. (*Id.* at pp. 571, 575–576.) Moreover, there was no evidence the arbitration had even begun and neither the parties nor the trial court had identified any prejudice due to the delay. (*Id.* at p. 575.) On appeal, the employer had claimed prejudice because it would have to relitigate the order granting its petition to compel arbitration. The court explained that prejudice resulted "from the fact of intervention," not the delay in seeking intervention. (*Ibid.*)

Although the delay here also was "relatively short"— indeed, shorter than that in *Crestwood*—the procedural posture of this case is quite different. (*Crestwood, supra*, 70 Cal.App.5th at pp. 575–576 [even if Labor Commissioner's excuse was "not satisfactory, the first two factors—particularly, the absence of prejudice—coupled with the relatively short length of the delay establish that the trial court abused its discretion in finding the intervention motion untimely"].) Critically, the funds to which WCP Parent claims a senior security interest were disbursed almost a month before it moved to intervene to assert that interest. As WCP Parent notes, Lazar did not explicitly claim any prejudice due to WCP Parent's delay. At the hearing, Lazar's counsel mentioned the cost of having to appear at additional hearings, but Lazar would have incurred those costs if WCP Parent had filed its motion earlier. Nevertheless, Lazar mentioned the settlement funds had been disbursed. And the trial court here, unlike that in *Crestwood*, expressly found prejudice. The court described WCP Parent's proposed intervention as "seek[ing] to reopen the case and risk[ ] disturbing the settlement agreed to by the parties." The court also found that, because the settlement funds had been disbursed

15

almost one month before WCP Parent moved to intervene, "the parties would be further unduly prejudiced by WCP Parent's delayed intervention." The court did not precisely state what prejudice the parties would suffer. We can infer, however, proceedings to establish WCP Parent's priority interest and/or to "undo" the payment of the settlement proceeds to Pacific American would require Lazar to expend time and expense that it otherwise would not have incurred had WCP Parent attempted to intervene before July 8.

Finally, the reason courts are reluctant to deny mandatory intervention as untimely is because the " ' "would-be intervenor may be seriously harmed if intervention is denied." ' " (*Crestwood, supra*, 70 Cal.App.5th at p. 574.) Here, WCP Parent stood to lose $25,000 if unable to intervene and ask the court to direct the settlement proceeds be paid to it—based on its senior security lien—rather than to Pacific American. If WCP Parent had considered that loss to be serious, then it should have filed an ex parte application to try to stop the disbursement of those funds without its participation in the proceeding. It did not. WCP Parent's counsel stated he did not know when the settlement funds would be disbursed but that is precisely why an ex parte application was necessary. If the loss of those funds was not serious enough for WCP Parent to seek immediate relief, then we do not see how the above policy against denying mandatory intervention based on untimeliness to prevent "serious[ ] harm" applies here.

Accordingly, the court did not abuse its discretion in finding the motion untimely.

16

## DISPOSITION

The September 30, 2022 order denying WCP Parent, LLC's motion for leave to intervene is affirmed.  As no respondent appeared, no costs are awarded.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EGERTON, J.

We concur:

LAVIN, Acting P. J.

ADAMS, J.

17